UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHERYL FOLLMAN,
individually and on behalf of all
others similarly situated,

                                            Plaintiff,        **MEMORANDUM AND ORDER**

        -against-

                                            10-CV-1921 (SLT)

WORLD FINANCIAL NETWORK
NATIONAL BANK,

                                            Defendant.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**

       Plaintiff, Cheryl Follman, brings a class action against defendant, World Financial Network National Bank, alleging violations of the Truth in Lending Act. Defendant now moves to stay the proceeding in favor of arbitration. For the reasons discussed below, the motion is denied.

## BACKGROUND

       The material facts of this case are undisputed. They are drawn from plaintiff's complaint and the affidavits accompanying the parties' motion papers. In the spring of 2009, plaintiff applied and was approved for a Victoria's Secret credit card account (the "credit card"), issued by defendant (Affidavit of Cheryl Follman at 1; Affidavit of Andrea Dent at 1). Plaintiff made her first and only purchase using the credit card on April 28, 2009 (Aff. of Follman at 2; Aff. of Dent at 1-2). Shortly after making this purchase, plaintiff paid her bill in full without incurring any finance or late charges (Aff. of Follman at 2). Plaintiff has not owed a balance on the

account or used the credit card since that time (*id.*), but her credit card account with defendant remains open (Aff. of Dent at 2).

Plaintiff's cardholder agreement with the bank contains a "change-of-terms" provision that reads as follows:

> 17. CHANGES. We may add, change or delete the terms of this Agreement (including, but not limited to, Annual Percentage Rate and fees), at any time with or without notice, except as may be required by applicable federal and Ohio law. These additions, changes or deletions of terms will apply to new purchases and to all amounts you already owe us.

(Complaint at Exhibit 4; Aff. of Dent at Exhibit 1.) The cardholder agreement also contains a provision addressing attorney fees and collection costs:

> 16. ATTORNEY FEES AND COLLECTION COSTS. If you do not comply with your obligations under this Agreement, you agree to pay the reasonable attorneys' fees, expenses and court costs we incur in order to collect your Account or protect our rights.

(Complaint at Exhibit 4; Aff. of Dent at Exhibit 1.)

In December, 2009, defendant mailed to plaintiff, at her account address, an "Important Notice," which contained changes to plaintiff's cardholder agreement (Aff. of Dent at 2).[1] The notice was sent separately from plaintiff's monthly statement, and on the outside of the envelope was the text, "Important Information Inside" (Aff. of Dent at Ex. 3). In addition to making changes to the finance charges and fees set out in the cardholder agreement, the "Important Notice" included "new dispute resolution provisions" (Aff. of Dent at Ex. 3). The new dispute resolution provisions included a comprehensive arbitration provision waiving plaintiff's right

---

[1] Though plaintiff states she has "no recollection of receiving" the notice of changes to her customer agreement, she does not dispute the evidence of it being mailed by defendant.

2

"(1) to go to court to resolve any dispute; (2) to have a jury resolve any dispute; and (3) to bring, join in or participate in class action lawsuits or arbitrations" in favor of resolving disputes by individual arbitration at either party's election (*Id.*).

The notice provided that the credit card holders could reject the changes to their cardholder agreement by canceling their credit card (Aff. of Dent at 3-4; Aff. of Dent at Exhibit 3). Alternatively, it provided that the credit card holders could keep their credit card accounts open and accept the account changes, but separately opt out of the new arbitration provision (Aff. of Dent at 3-4; Aff. of Dent at Exhibit 3). To opt out of the arbitration provision, a credit card holder could send a signed letter to defendant within 30 days after receipt of the "Important Notice" (Aff. of Dent at 3-4; Aff. of Dent at Exhibit 3). Plaintiff did not reject the changes by canceling her credit card account, nor did she opt out of the arbitration provision.

In April, 2010, plaintiff brought this putative class action against defendant alleging violations of the Truth in Lending Act ("TILA"). Defendant now moves under the Federal Arbitration Act and the arbitration provision purportedly added to the cardholder agreement to stay this action pending the completion of arbitration.

## DISCUSSION

*A. Arbitration*

The Federal Arbitration Act is the Congressional expression of a policy strongly favoring the enforcement of arbitration clauses in contracts. It states,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform

3

> the whole or any part thereof . . . shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for
> the revocation of any contract.

9 U.S.C. §2. If a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration. 9 U.S.C. §§3-4 (1988); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

"A court asked to stay proceedings pending arbitration in a case covered by the Act has essentially four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco*, 815 F.2d at 844-45; *see also Kurz v. Chase Manhattan Bank USA, N.A*, 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004). In this matter, the parties' dispute centers only on the first consideration.

Though the interpretation of an arbitration agreement is governed by the federal substantive law of arbitration, *see, e.g., In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554, 559 (2d Cir. 1995), it must first be determined whether the parties entered into a binding contract to arbitrate. *Specht v. Netscape Communications Corp.*, 150 F.Supp. 2d 585, 589 (S.D.N.Y. 2001). In deciding whether the parties had a valid arbitration agreement, courts apply ordinary state law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract, . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law.");

4

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).

*B. Choice-of-Law*

Though this case is brought in New York, the parties' credit card agreement contains a choice-of-law provision instructing that Ohio law governs the agreement (Complaint at Exhibit A; Aff. of Dent at Exhibit 3). Indeed, plaintiff asserts that the cardholder agreement's choice-of-law provision should govern and Ohio law should be applied to the issue of contract formation. Although defendant drafted the agreement, it is silent on the issue, but its position is implied by its citations solely to New York law. However, defendant presents no reason why its cardholder agreement's choice-of-law provision is invalid or should otherwise not be enforced.

To determine which state's law to apply to the issue of contract formation, a federal court sitting with federal question jurisdiction looks to the choice-of-law doctrine of the forum state; here, New York. *Specht*, 150 F. Supp. 2d at 589-91 n.7. In New York, courts will enforce parties' contractual choice-of-law provision "so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. MasTec North America, Inc.*, 7 N.Y.3d 624, 629 (2006). Here, because defendant's principal place of business is in Ohio, and defendant's cardholder agreement instructs that Ohio law governs the agreement, its choice-of-law provision will be enforced. Accordingly, Ohio law will be applied to determine whether a valid arbitration agreement exists between the parties.

*C. Whether the Cardholder Agreement Contained an Enforceable Arbitration Agreement*

The narrow question presented by the parties is whether the "change-of-terms" provision in the cardholder agreement reserved for defendant the contractual right to add an arbitration

5

provision to the parties' contract.² Whether the arbitration provision became part of the cardholder agreement depends upon the meaning and scope of the change-of-terms provision. Defendant's position is that the cardholder agreement's change-of-terms provision provides the contractual authority to add the arbitration provision and, moreover, that statutory authority provides for such a change-of-terms provision. Conversely, plaintiff's position is that the scope of the change-of-terms provision in the cardholder agreement is limited to the amendment of terms actually present in the agreement -- specifically, financial terms and fees -- or adding new terms envisioned by the change-of-terms provision. Plaintiff argues that dispute resolution rights are not addressed in the original agreement or contemplated by the change-of-terms provision, thus, the change-of-terms provision does not give defendant authority to add an arbitration provision. In essence, the parties disagree about whether there is a substantive limitation on the types of terms that may be added pursuant to the cardholder agreement's change-of-terms provision, and if there is, whether the arbitration provision falls within that limitation.

*1. Legal Authority*

In Ohio,

> in order for a valid contract to exist, there must be a "meeting of the minds" on the essential terms of the agreement, which is usually demonstrated by an offer and acceptance, and consideration. An offer is defined as "the manifestation of

---

² Plaintiff has not raised any issues contesting the validity of the substance of the arbitration provision itself or whether it is procedurally or substantively unconscionable. Instead, the dispute is limited to whether the defendant had the contractual authority to add the arbitration provision. In any event, the plaintiff has not provided any reason why the method by which the arbitration clause was added, or its substance, was unconscionable. *See Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819 (S.D.Miss. 2001) (holding that under Ohio law, arbitration provision added pursuant to change-of-terms provision was not procedurally or substantively unconscionable).

> willingness to enter into a bargain, so made as to justify another
> person in understanding that his assent to that bargain is invited
> and will conclude it." Further, the essential terms of the contract,
> usually contained in the offer, must be definite and certain.

*Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 521, 758 N.E.2d 678, 682 (Ohio App. 1 Dist. 2001). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to so submit." *Id.* (citing *Council of Smaller Enterprises v. Gates McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352, 1355 (Ohio 1998)).

Ohio's high court has not directly addressed whether, under Ohio law, an arbitration provision may be unilaterally added to a credit card agreement through a change-of-terms provision. However, one Ohio intermediate appellate court has considered the issue. *See Maestle v. Best Buy Co.*, 2005 WL 1907282 (Ohio App. 8 Dist. 2005). It is pertinent that "[w]hen the law of a particular state is not established, federal courts . . . predict how the state court would resolve any ambiguities. To do so courts look to decisions of the state's trial and appellate courts." *G-I Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 249 (S.D.N.Y. 2001) (internal citations omitted).

Plaintiff argues that *Maestle v. Best Buy Co.*, decided by an intermediate appellate court in Ohio, is most analogous to the facts of this case and should thus control. In *Maestle*, the defendant credit card issuer mailed the plaintiff credit card holder a notice of change of terms, along with the new terms and conditions, which included a "comprehensive arbitration provision." *Maestle*, 2005 WL 1907282 at *1. The cardholders were instructed to cancel their accounts if they did not accept the new terms. *Id.* The original cardholder agreement did not

7

contain an arbitration provision or any provision setting out the method or forum for dispute resolution, but it did contain a change-of-terms provision. *Id.* That provision provided that the terms of the cardholder agreement may be changed or amended,

> upon fifteen (15) days prior written notice if required by law. Any change of amended fee, charge, interest rate, FINANCE CHARGE, ANNUAL PERCENTAGE RATE, or minimum payment amount, whether increased or decreased, may be effective to both the outstanding Account Balance and future transactions.

*Id.* at *1, *6. There, as in this case, the question presented was whether the unilateral addition of an arbitration provision was within the substantive scope of the change-of-terms provision.

Preliminarily, the *Maestle* court declined to treat an applicable Ohio statute, OHIO REV. CODE ANN. § 1109.20(D),[3] as granting a bank "the unilateral right . . . to make any kind of change whatsoever as long as the specified procedure is followed." *Id.* at *4. Instead, the court stated that the statute served only to permit amendments for terms contemplated in the original agreement. *Id.* Since the original cardholder agreement did not include or contemplate any provision regarding the method or forum for resolving a dispute, the governing statute did not authorize amending the original cardholder agreement to include an arbitration clause. *Id.* Accordingly, the court considered solely whether the change-of-terms provision in the cardholder agreement authorized the later addition of the arbitration clause.

The *Maestle* court ultimately concluded that the change-of-terms provision did not authorize the issuer to unilaterally add an arbitration clause. The court's decision turned on two

---

[3] The statute is titled, "Interest and finance charges; other fees and charges." The relevant section reads: "Subject to any requirements under applicable federal law, a bank and a borrower may specify in their agreement any terms and conditions for modifying or amending the agreement." OHIO REV. CODE ANN. § 1109.20(D) (2010).

8

principal facts: first, the change-of-terms provision "referenced only *changes* to payments, charges, fees and interest," but did not reference amending the cardholder agreement in regard to dispute resolution rights. *Id.* at *6 (emphasis added). Second, the original cardholder agreement did not address plaintiff's rights concerning forums for resolving disputes. "Hence, there was no 'meeting of the minds' as to the [later] inclusion of the arbitration clause at the inception of the contract," and the court did not enforce the arbitration provision against the plaintiff. *Id.*

Plaintiff contends *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189 (E.D.N.Y. 2004), decided under Virginia law and positively cited by *Maestle*, is similarly analogous. Though it's interpretation of Virginia law is not binding on this Court, it is instructive because it contains many of the elements found in the case at hand. In *Stone*, the plaintiff's cardholder agreement with the Bank contained the following change-of-terms provision:

> Changes in Terms. We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Changes to your annual percentage rate(s) will apply to your account balance from the effective date of change, whether or not the account balance included items billed to the account before the change date and whether or not you continue to use your account. Changes to fees and other charges will apply to your account from the effective date of change.

*Stone*, 341 F. Supp. 2d at 191. Two years later, the Bank mailed the plaintiff a notice stating that unless plaintiff opted out within a year, the Bank would add an arbitration clause to the cardholder agreement. *Id.* at 192. The plaintiff did not opt out, and the Bank sought to enforce the arbitration provision against her. *Id.* at 191-92.

9

As in *Maestle*, the *Stone* court narrowed the question to whether the change-of-terms provision in the original cardholder agreement authorized the Bank to unilaterally add an arbitration clause. *Id.* at 197. Ultimately, the court answered that question in the negative, for two principal reasons: first, the change-of-terms provision did not contemplate an amendment that would affect the cardholder's dispute resolution rights; and second, the original cardholder agreement made no mention of dispute resolution rights. Thus, like the *Maestle* court, the *Stone* court imposed a substantive limitation on the

> universe of terms which could be altered or affected pursuant to the clause. To hold otherwise would permit the Bank to add terms to the [cardholder agreement] without limitation as to the substance or nature of such new terms. There is nothing to suggest that plaintiff intended to give such unlimited power to the Bank, or that the law would sanction such a grant.

*Id.* at 198. Accordingly, the court did not enforce the arbitration clause against the plaintiff. *Id.*

*2. Defendant's Arbitration Provision*

Based upon the existing case law, *Maestle* is properly read as imposing substantive limitations on the type of terms that may be added or amended pursuant to a change-of-terms provision in a cardholder agreement. The scope of those substantive limitations is determined by the language of the change-of-terms provision itself and whether dispute resolution rights are addressed or contemplated in the original cardholder agreement. Accordingly, the question of whether, under Ohio law, the change-of-terms provision in this case authorized defendant to add an arbitration clause to the cardholder agreement will turn on the language of the provision and plaintiff's cardholder agreement.[4]

---

[4] Defendant's attempt to distinguish this case from *Maestle* on the grounds that plaintiff could have rejected her account changes by closing her account or separately opting-out of the

10

*i. The change-of-terms provision*

The cardholder agreement between the parties set out the following change-of-terms provision:

> 17. CHANGES. We may add, change or delete the terms of this Agreement (including, but not limited to, Annual Percentage Rate and fees), at any time with or without notice, except as may be required by applicable federal and Ohio law. These additions, changes or deletions of terms will apply to new purchases and to all amounts you already owe us.

(Complaint at Exhibit A; Aff. of Dent at Exhibit 1.) Unlike the change-of-terms provision before the *Maestle* court, the instant provision specifies that defendant may "add," in addition to change, the terms of the cardholder agreement. The change-of-terms provision in *Maestle*, on the other hand, only permitted the Bank to "change or amend," but not add, terms. *Maestle*, 2005 WL 1907282 at *1, *6.

Though the language in the instant change-of-terms provision is broader than the provision in *Maestle*, that fact is not dispositive. Indeed, the issue is not whether defendant may *add* new terms, but whether the terms added are the *types of terms* the contract contemplated defendant could add. *Id.* at *4 (citing, approvingly, *Badie v. Bank of America*, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (Cal. Dist. Ct. App. 1998), which reasoned that the arbitration clause was not binding "because it was not the type of change contemplated by the parties when they signed the original agreement"); *see also Stone*, 341 F. Supp. 2d at 196 ("[Many courts distinguish *Badie* because] the change-in-terms provision did not explicitly allow *additions* to the agreement, as opposed to alterations or deletions. However, this Court finds these differences

---

arbitration provision, but did not, is not persuasive. Such an argument may be material if the procedural unconscionability of the addition was at issue, but here it is not.

11

not material .... As the *Badie* court itself noted, the material issue was what types of *terms* the contract allowed the bank to change, not whether the bank could add new terms." (internal citations omitted) (emphasis in original)).

Similarly, defendant suggests *Maestle* is distinguishable from this case because the instant change-of-terms provision states that the terms that were subject to being added "includ[ed] but were not limited to" annual percentage rate and fees, while in *Maestle*, the change-of-terms provision did not contain the "including but not limited to" language. This fact is also not dispositive. Even though the instant change-of-terms provision contains language that does not limit itself to authorizing changes to only some, but not other, terms, an added term must still be within the substantive scope of the change-of-terms provision - that is, it must be contemplated by the original agreement. *See Maestle*, 2005 WL 1907282 at *6 ("[Cardholders] could not anticipate that [the Bank] ... would amend the agreement to add an arbitration clause, since the amendment provision referenced only changes to payments, charges, fees and interest. Furthermore, nowhere in the contract is there a clause addressing forums of dispute."). Thus, if defendant's arbitration provision is to be valid, the parties' dispute resolution rights must be addressed or contemplated in the original agreement.

*ii. Whether the original cardholder agreement contemplated plaintiff's dispute resolution rights*

Defendant argues that the parties' original cardholder agreement squarely addresses dispute resolution rights. It points to the following provision ("section 16"), which preceded the change-of-terms clause in the original agreement:

> 16. ATTORNEY FEES AND COLLECTION COSTS. If you do not comply with your obligations under this Agreement, you agree

12

> to pay the reasonable attorneys' fees, expenses and court costs we
> incur in order to collect your Account or protect our rights.

It is true that in *Maestle*, the cardholder agreement contained no provisions related to the method, forum, or consequence of a legal dispute between the parties, while in this case, the original cardholder agreement does set out a cardholder's liability for defendant's attorneys' fees and court costs. However, that provision, alone, is insufficient to have permitted plaintiff to anticipate the substantive amendment to her rights that the added arbitration amendment effected. *See Maestle*, 2005 WL 1907282 at *5-*6; *accord Stone*, 341 F. Supp. 2d at 198; *Badie*, 67 Cal.App.4th at 801.

Section 16 sets out defendant's right to collect "the reasonable attorneys' fees, expenses and court costs" incurred by defendant in the event that it enforces *its* rights *against* a cardholder. It does not address a cardholder's dispute resolution rights against defendant. Conversely, the arbitration provision affects a wholly different matter: the forum through which a cardholder may seek redress against defendant. In effect, the arbitration provision eliminates plaintiff's, as well as defendant's, right to seek redress against the other party in a court of law or in the context of a class action lawsuit or arbitration. Section 16 does not, then, address the same substantive rights that the arbitration provision addresses. This conclusion is further evidenced by the fact that the arbitration provision does not displace or amend section 16. Since neither section 16, nor any other provision in the original cardholder agreement, contemplates the substantive rights that the arbitration provision addresses, there was not a "'meeting of the minds' as to the inclusion of the arbitration clause at the inception of the contract." *Maestle*, 2005 WL 1907282 at *6; *see*

*Nationwide Mutual Insurance Co. v. Marsh*, 15 Ohio St.3d 107, 472 N.E.2d 1061 (Ohio 1984); *accord Badie*, 67 Cal.App.4th at 801.

Because the arbitration provision falls outside the scope of the universe of terms contemplated by the original amendment, the change-of-terms provision did not authorize defendant to add it. Accordingly, the arbitration amendment is not part of the agreement between the parties, and defendant may not enforce the provision against plaintiff.

## CONCLUSION

For the foregoing reasons, defendant's motion to stay the proceedings in favor of arbitration is denied.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: October 20, 2010
Brooklyn, New York

14