UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHERYL FOLLMAN,<br>individually and on behalf of all others<br>similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-cv-1921(SLT)(CLP) |
| | ) | |
| WORLD FINANCIAL NETWORK<br>NATIONAL BANK, | ) ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| Defendant. | ) | |
| | ) | |

DEFENDANT WORLD FINANCIAL NETWORK NATIONAL BANK'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LEADER & BERKON LLP

630 THIRD AVENUE

NEW YORK, NY 10017

(212) 486-2400

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................... 1

II.    SUMMARY OF ARGUMENT ................................................................... 2

    A.    Statute of Limitations.................................................................... 2

    B.    Legal Sufficiency of the Bank's Disclosures............................... 3

    C.    No Statutory Damages .................................................................. 3

III.    UNDISPUTED MATERIAL FACTS ........................................................ 4

IV.    SUMMARY JUDGMENT STANDARD .................................................. 5

V.    STATUTORY PROVISIONS .................................................................... 6

VI.    ARGUMENT.............................................................................................. 8

    A.    Follman's Claim Is Time-Barred by TILA's One-Year Statute of
        Limitations ................................................................................... 8

        1.    TILA's One-Year Statute of Limitations Began to Run When
               Follman Received the TILA Disclosures Which Allegedly Omitted
               a Required Provision........................................................ 8

        2.    The Running of the Statute of Limitations Was Not Tolled Until
               Follman Made a Purchase with Her Credit Card ...................... 11

    B.    The Bank's Account-Opening Disclosures Complied with TILA...................... 16

        1.    Relevant TILA Provisions ......................................... 17

        2.    Relevant Provisions in the Credit Card Agreement ................... 17

        3.    Relevant TILA Policies.......................................... 19

    C.    In Any Event Follman is Not Entitled to Statutory Damages............................. 22

VII.    CONCLUSION........................................................................................ 24

# TABLE OF AUTHORITIES

FEDERAL CASES                                                                    Page(s)

*American Express Co. v. Koerner*,
    452 U.S. 233 (1981)....................................................................................................12, 14

*Brown v. Payday Check Advance*,
    202 F.3d 987 (7th Cir. 2000) ................................................................................22

*Collinsgru v. Palmyra Bd. of Educ.*,
    161 F.3d 225 (3d Cir. 1998)..................................................................................13

*Corrigan v. First Horizon Home Loan Corp.*,
    No. 09-12721, 2010 U.S. Dist. LEXIS 17076 (E.D. Mich. Feb. 25, 2010).............9

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998)....................................................................................6

*DeMando v. Morris*,
    206 F.3d 1300 (9th Cir. 2000) ..............................................................................15

*Duncan v. Walker*,
    533 U.S. 167 (2001).............................................................................................13

*Elliott v. Elliott*,
    49 F.R.D. 283 (S.D.N.Y. 1970) ...............................................................................6

*Goldman v. First Nat'l Bank*,
    532 F.2d 10 (7th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976)........................9, 10

*Kruetzberg v. County of Suffolk*,
    No. 04-3835, 2006 U.S. Dist. LEXIS 84171 (E.D.N.Y. Nov. 20, 2006)..................6

*Lingad v. Indymac Fed. Bank*,
    682 F. Supp. 2d 1142 (E.D. Cal. 2010)...................................................................9

*McAnaney v. Astoria Fin. Corp.*,
    No. 04-CV-1101 (JFB) (WDW), 2008 U.S. Dist. LEXIS 5535 (E.D.N.Y. Jan. 25,
    2008) ....................................................................................................................16

*Meyer v. Ameriquest Mortg. Co.*,
    342 F.3d 899 (9th Cir. 2003)...................................................................................9

*Meyer v. Ameriquest Mtg. Co.*,
    331 F.3d 1028 (9th Cir. 2003) ...............................................................................10

*Moll v. US Life Title Ins. Co. of New York*,
    654 F. Supp. 1012 (S.D.N.Y. 1987)................................................................8

*Muro v. Target Corp.*,
    250 F.R.D. 350 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009).......................13, 14, 20

*Nativita St. Louis v. New York City Health & Hosp. Corp.*,
    682 F. Supp. 2d 216 (E.D.N.Y. 2010) (Townes, J.).............................................6

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010).................................................................15

*Schuster v. Citibank (S.D.), N.A.*,
    No. 00-cv-5940, 2002 U.S. Dist. LEXIS 22558 (S.D.N.Y. Nov. 21, 2002).................22, 23

*Steib v. St. James Bank & Trust Co.*,
    642 F. Supp. 910 (E.D. La. 1986)...........................................................11

*Talley v. Deutsche Bank Trust Co.*,
    No. 07-4984 (RBK), 2008 U.S. Dist. LEXIS 83148 (D.N.J. Oct. 15, 2008)...................15

*Turk v. Chase Manhattan Bank, USA, N.A.*,
    No. 10-cv-1573, 2001 U.S. Dist. LEXIS 8862 (S.D.N.Y. June 11, 2001).....................23

*United Nat'l Ins. Co. v. The Tunnel, Inc.*,
    988 F.2d 351 (2d Cir. 1993).................................................................6

*Van Pier v. Long Island Savings Bank, FSB*,
    20 F. Supp. 2d 535 (S.D.N.Y. 1998)..........................................................8

*Watts v. Key Dodge Sales*,
    707 F.2d 847 (5th Cir. 1983)...............................................................19-20

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000).................................................................6

**FEDERAL STATUTES**

15 U.S.C. § 1601(a).............................................................................6, 19, 20

15 U.S.C. § 1602(i)....................................................................................7

15 U.S.C. § 1637(a).......................................................................7, 8, 12, 13, 14

15 U.S.C. § 1640(a)........................................................................12, 13, 22

15 U.S.C. § 1640(a)(2)................................................................................22

15 U.S.C. § 1640(b)...................................................................................15

15 U.S.C. § 1640(e) ....................................................................................2, 8, 9,13, 15, 16

**RULES**

Fed. R. Civ. P. 56(a) .........................................................................................................5

**REGULATIONS**

12 C.F.R. § 226.2(a)(10) ................................................................................................10

12 C.F.R. § 226.6(a) .......................................................................................................20

12 C.F.R. § 226.6(a)(2) .......................................................................................7, 17, 20

12 C.F.R. § 226.6(a)(2), n.12 ..............................................................................7, 17, 19

12 C.F.R. § 226 Supp. I Comment 6(a)(2)-8 ......................................................8, 17, 20

12 C.F.R. § 226 Supp. I, Introduction, ¶ 4(a) ...........................................................20-21

**OTHER AUTHORITIES**

NCLC, *Truth in Lending*, § 5.5.510.2 (6th ed. 2007) ....................................................21

S. Rep. No. 96-73, reprinted in 1980 U.S.C.C.A.N. .......................................................22

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHERYL FOLLMAN, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) ) | C.A. No. 10-cv-1921(SLT)(CLP) |
| WORLD FINANCIAL NETWORK NATIONAL BANK, ) ) ) | |
| Defendant. ) ) ) | |

## DEFENDANT WORLD FINANCIAL NETWORK NATIONAL BANK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant World Financial Network National Bank (the "Bank"), by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.  INTRODUCTION

Plaintiff Cheryl Follman ("Follman") is the holder of a Victoria's Secret Credit Card issued by the Bank.  She has sued the Bank for violating the Truth in Lending Act ("TILA").  Based upon the undisputed facts, the Complaint must be dismissed as a matter of law on the following independent grounds:

1.  The Complaint is time-barred under TILA's one-year statute of limitations because Follman admits she received the Bank's TILA account-opening disclosures (on two separate occasions) more than one year before she filed suit.

2.  The Bank's TILA account-opening disclosures were legally sufficient and did not violate TILA.

3.      Follman's claim is not one of the types enumerated in TILA as qualifying for statutory damages.

## II.      SUMMARY OF ARGUMENT

### A.      Statute of Limitations

For the claim asserted by Follman, TILA has a one-year statute of limitations: "[a]ny action under this section may be brought in any United States district court ... within *one year from the date of the occurrence of the violation* ...." 15 U.S.C. § 1640(e) (emphasis added). The violation alleged by Follman is that the Bank's account-opening disclosures in her Victoria's Secret Credit Card Agreement omitted a required disclosure -- the effect that an increase in the Annual Percentage Rate would have on the cardholder's minimum monthly payment. (Compl., ¶¶ 29-33).

Follman admits that she received the Bank's TILA account-opening disclosures on two occasions: on March 1, 2009, when she applied for a Victoria's Secret Credit Card and, again, on or shortly before April 6, 2009, when she received her Credit Card. The alleged omission that is the basis for Follman's suit was plain on the face of the disclosure documents, and there is no ground for tolling the running of the statute of limitations.

Accordingly, TILA's one-year statute of limitations began to run no later than April 6, 2009, and it expired no later than April 6, 2010. Follman commenced this action on April 28, 2010, more than one year after she received the Bank's TILA account-opening disclosures.[1] Accordingly, her TILA claim is time-barred.

---

[1]      As discussed hereinafter, Follman errs in arguing that the statute of limitations did not begin to run until she made her first purchase on April 28, 2009. Her pre-motion conference letter *incorrectly* states that "WFNNB does not dispute" that "until Follman made her first purchase, she did not have the right to sue."

2

**B.     Legal Sufficiency of the Bank's Disclosures**

Even if Follman's Complaint was timely filed, the Bank is entitled to judgment as a matter of law because its TILA disclosures were legally sufficient and did not violate TILA. The disclosure that the Bank did make -- that "[a]n increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge" -- is the *only* disclosure concerning the effect of a rate increase that will *always* be correct because the Credit Card Agreement directly links the finance charge to the rate.

By contrast, the Credit Card Agreement does not directly link the minimum monthly payment to the rate.  The amount of the minimum monthly payment can change, independent of any change in the rate, depending upon a variety of unrelated factors, such as the way the customer uses the account as well as the decisions the customer makes as to how much to pay at any one time.[2]  Under these circumstances, TILA did not require the Bank to disclose that an increase in the interest rate would increase the minimum monthly payment.

**C.     No Statutory Damages**

Even if the Bank was required to include in its disclosures a statement concerning the effect of a rate increase on the scheduled minimum periodic payment amount, that is not the type of claim for which statutory damages are available.  TILA limits the recovery of statutory damages to certain types of disclosure violations which do not include the alleged non-disclosure at issue here.

For these three <u>independent</u> reasons, Follman's TILA Complaint should be dismissed with prejudice.

---

[2]     Follman's pre-motion conference letter *incorrectly* states that "[t]he Bank does not dispute that one of the effects of an increase in the variable rate is an increase in the minimum payment."

## III.   UNDISPUTED MATERIAL FACTS

The following material facts, *inter alia*, are undisputed.[3]  On March 1, 2009,

Follman submitted an in-store application for a Victoria's Secret Credit Card issued by the Bank

and received a copy of the Credit Card Agreement.  (Statement, ¶ 1).  The Credit Card

Agreement, a copy of which is attached to Follman's Complaint as Exhibit A,[4] contained TILA

account-opening disclosures.  (*Id.* ¶ 2).  Among other things, Paragraph 13.c of the Credit Card

Agreement stated:

> The Daily Periodic Rate of FINANCE CHARGE applicable to
> your Account will be computed by adding 13.8% to the value of an
> "Index" and dividing by 365 (The corresponding ANNUAL
> PERCENTAGE RATE will be the Index plus 13.8%).  The Index
> in effect for each Billing Period shall be the highest "Prime Rate"
> of interest as published in the "Money Rates" section of The Wall
> Street Journal for the calendar month preceding the month in
> which the Billing Period begins, rounded upward, if necessary, to
> the nearest .001% ("Index").  The corresponding ANNUAL
> PERCENTAGE RATE will not decrease below 22.8% nor
> increase above 24.99%.  An increase or decrease in the Annual
> Percentage Rate will result in a corresponding increase or decrease
> in the amount of Finance Charge.

(*Id.*).  The Credit Card Agreement also contained a lengthy description of how "Finance

Charges" are calculated and when a "Minimum Payment" is due.  (Agreement, Ex. 1 hereto,

¶¶ 10, 13a-b).

The Bank did not approve Follman's credit card application on March 1, 2009

because there was a fraud alert on her credit report.  (Statement, ¶ 3).  On March 27, 2009,

Follman called the Bank and verified her information, and the Bank approved her credit card

---

[3]      The Bank incorporates herein by reference the Parties' Joint Local Rule 56.1 Statement
of Undisputed Facts ("Statement").

[4]      A more legible copy of the Credit Card Agreement is attached hereto as Exhibit 1.

application. (*Id.* ¶ 4). On March 30, 2009, the Bank mailed Follman a Victoria's Secret Credit

Card along with another copy of the Credit Card Agreement containing the TILA account-

opening disclosures. (*Id.* ¶ 5). Follman received the Victoria's Secret Credit Card and Credit

Card Agreement on or before April 6, 2009. (*Id.*). On April 6, 2009, Follman activated her

Victoria's Secret Credit Card over the telephone. (*Id.* ¶ 6).

        On April 28, 2009, Follman used her Victoria's Secret Credit Card to make her

first and only purchase of $28.00 by swiping her Credit Card at the Victoria's Secret store

located in the King's Plaza Shopping Center in Brooklyn, New York. (*Id.* ¶ 7). Follman later

paid her $28 balance in full and did not incur a finance charge or make a minimum payment.

(*Id.* ¶ 8).

        On April 28, 2010, Follman filed her class action Complaint in this action. (*Id.*

¶ 9). Follman seeks to recover, on behalf of herself and a class of similarly situated Victoria's

Secret credit card holders, declaratory and injunctive relief, "[m]aximum statutory damages" and

"[a]ttorney fees, litigation expenses, and costs." (Complaint, Wherefore clause). Follman does

not allege any actual damages.[5]

## IV.   SUMMARY JUDGMENT STANDARD

        Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper

where the moving party "shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Although the

moving party bears the initial burden of establishing that there are no genuine issues of material

fact, once such a showing is made, the non-movant must set forth specific facts showing that

---

[5]     The parties have agreed to defer class proceedings pending determination of the instant
summary judgment motion on Follman's individual claim. (Minute Entry from Status
Conference with Pollak, M.J., Dkt. 21).

there is a genuine issue for trial.'" *Kruetzberg v. County of Suffolk*, No. 04-3835, 2006 U.S. Dist.

LEXIS 84171, at *5 (E.D.N.Y. Nov. 20, 2006) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d

33, 41 (2d Cir. 2000)).   The non-moving party "may not rely on mere conclusory allegations nor

speculation ...." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

Summary judgment serves "the salutary purpose" of "avoiding protracted,

expensive and harassing trials." *Nativita St. Louis v. New York City Health & Hosp. Corp.*, 682

F. Supp. 2d 216, 227 (E.D.N.Y. 2010) (Townes, J.); *see also United Nat'l Ins. Co. v. The Tunnel,

Inc.*, 988 F.2d 351, 355 (2d Cir. 1993) ("[s]ummary judgment is a tool to winnow out from the

trial calendar those cases whose facts predestine them to result in a directed verdict"); *Elliott v.

Elliott*, 49 F.R.D. 283, 284 (S.D.N.Y. 1970) ("The summary judgment procedure is provided to

dispose of cases where pure issues of law are clearly presented for decision obviating the

necessity for a trial on the merits.  It is intended to economize the court's time ....").

In this case, the parties have agreed upon all of the material facts needed to

determine the legal issues raised in the Bank's summary judgment motion.  Because the Bank,

based upon those undisputed material facts, is entitled to judgment as a matter of law, Follman's

Complaint must be dismissed with prejudice.

## V.    STATUTORY PROVISIONS[6]

By way of overview, the purpose of TILA is to promote the informed use of

consumer credit by providing for disclosures about its terms and cost.  *See* 15 U.S.C. § 1601(a).

The statute requires creditors to disclose the cost of credit as a dollar amount (the finance charge)

---

[6]    This brief discusses the provisions of TILA, Regulation Z, and the official staff
commentary as they existed in 2009 at the time of the receipt of the disclosures.
Subsequent amendments to TILA have changed the numbering of the relevant provisions,
and for the convenience of the Court, citations to the current version of TILA are
included in brackets where appropriate the first time they are cited.

and as an annual percentage rate.  Uniformity in creditors' disclosures is intended to assist

consumers in comparison shopping.  *Id.*  TILA is implemented by the Federal Reserve Board's

Regulation Z (12 C.F.R. Part 226).  The Board's official staff commentary (12 C.F.R. Part 226

(Supp. I)) interprets Regulation Z and provides guidance to creditors in applying it to specific

transactions.

   With respect to the instant case, TILA requires certain disclosures to be made for

"[o]pen end consumer credit plans," such as the Victoria's Secret Credit Card Account at issue

here.  15 U.S.C. § 1637(a).  An "open-end" credit transaction is one in which "the creditor

reasonably contemplates repeated transactions … and provides for a finance charge which may

be computed from time to time on the outstanding unpaid balance."  15 U.S.C. § 1602(i).  TILA

requires that those initial disclosures be made to consumers "[b]efore opening any account."  15

U.S.C. § 1637(a).

   Regulation Z provides that in the initial disclosure statement "[t]he creditor shall

disclose to the consumer … each of the following items, *to the extent applicable*:"

> (a) Finance charge.  The circumstances under which a finance
> charge will be imposed and an explanation of how it will be
> determined, as follows: … (2) A disclosure of each periodic rate
> that may be used to compute the finance charge, the range of
> balances to which it is applicable, and the corresponding annual
> percentage rate.[12]

12 C.F.R. § 226.6(a)(2) (footnote 12 in original) (emphasis added) [12 C.F.R. § 226.6(b)(4)(i)

(2011)].  Footnote 12 to the aforesaid section of Regulation Z states that "[i]f a creditor is

offering a variable rate plan, the creditor shall also disclose: (1) [t]he circumstances under which

the rate(s) may increase; (2) any limitations on the increase; and (3) the effect(s) of an increase."

[12 C.F.R. § 226.6(b)(4)(ii) (2011)].

The official staff commentary to Section 226.6(a)(2) provides that "examples" of the effects of a rate increase that "must be disclosed include: [a]ny requirement for additional collateral if the annual percentage rate increases beyond a specified rate ... [and] [a]ny increase in the scheduled minimum periodic payment amount." 12 C.F.R. § 226 Supp. I Comment 6(a)(2)-8 [12 C.F.R. § 226 Supp. I. Comment (b)(4)(ii)-4 (2011)].

Under TILA's one-year statute of limitations, in these circumstances, "[a]ny action under this section may be brought in any United States district court ... within *one year from the date of the occurrence of the violation* ...." 15 U.S.C. § 1640(e) (emphasis added). Here, the TILA "violation" alleged by Follman is the failure to provide account-opening disclosures that "disclos[ed] ... the effect that an increase in the rate would have ... on [Follman's] scheduled minimum periodic payment amount." (Compl. at ¶ 33).

## VI.    ARGUMENT

### A.    Follman's Claim Is Time-Barred by TILA's One-Year Statute of Limitations

#### 1.    TILA's One-Year Statute of Limitations Began to Run When Follman Received the TILA Disclosures Which Allegedly Omitted a Required Provision

As set forth above, Section 1637(a) of TILA requires that creditors make certain initial disclosures to consumers related to credit cards plans "[b]efore opening any account." 15 U.S.C. § 1637(a).  Under TILA, consumers who allege that they did not receive required initial disclosures must bring suit for civil liability "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Section 1640(e) is to be strictly construed. *See, e.g., Van Pier v. Long Island Savings Bank, FSB*, 20 F. Supp. 2d 535, 538-39 (S.D.N.Y. 1998); *Moll v. US Life Title Ins. Co. of New York*, 654 F. Supp. 1012, 1020-21 (S.D.N.Y. 1987).  Where, as here, the alleged omission is plain on the face of the disclosure documents, and there is no allegation that the defendant

prevented the plaintiff from discovering the alleged TILA disclosure violation within the one-year statutory period, dismissal is required. *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (dismissing TILA claim because plaintiff was in possession of all loan documents and did not allege any concealment or other conduct that would have prevented discovery of the alleged TILA violations during the one-year limitations period).

   In this case, the TILA "violation" asserted by Follman is the alleged omission of certain information from the Bank's account-opening disclosures. Follman admits she received those disclosures from the Bank on two occasions, both of which were more than one year before she commenced this action. There is no allegation of any conduct by the Bank that would have prevented Follman from discovering the alleged omission during the one-year limitations period. Indeed, as one court has observed, "[i]f no disclosure was made, of course, the debtor would be cognizant of that fact on the day the credit disclosure forms were given to him." *Goldman v. First Nat'l Bank*, 532 F.2d 10, 22 (7th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976). *See also id.* at 20 ("If, then, there is a violation of [TILA] in an open end credit plan, it occurs at the time the account is opened .... [T]here had been no disclosure and, thus, the violation was immediately apparent"); *Corrigan v. First Horizon Home Loan Corp.*, No. 09-12721, 2010 U.S. Dist. LEXIS 17076, at *13-14 (E.D. Mich. Feb. 25, 2010) ("Plaintiffs closed on the HELOC [home equity line of credit] on August 27, 2007, and filed suit on July 9, 2009 -- more than one year after the alleged inadequate disclosure occurred. Therefore, the court finds that Plaintiffs' claims arising out of Defendant's alleged inadequate disclosure ... are time barred under the TILA's one-year statute of limitations.").

Moreover, this is *not* a case in which Follman's cause of action was dependent upon the occurrence of an event occurring after the initial disclosures were provided -- *e.g.*, a consumer who is not assessed a finance charge until years after the initial disclosures were provided and only then discovers that the initial disclosures incorrectly described how finance charges would be calculated.[7]  The undisputed facts here show just the opposite.  Follman alleges that the TILA disclosures she received, *on their face*, omitted a required provision.  Therefore, for statute of limitations purposes, this case is conceptually the same as those in which a borrower of "closed-end" credit -- *e.g.*, a home mortgage, a car loan or a promissory note -- alleges that the original loan documents omitted a required TILA disclosure.[8]

Numerous cases involving closed-end credit hold that TILA's one-year statute of limitations begins to run at the time the loan documents are executed.  *See, e.g., Meyer v. Ameriquest Mtg. Co.*, 331 F.3d 1028, 1030 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The Meyers were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a)

---

[7]     The court in *Goldman, supra*, found that for purposes of determining when the statute of limitations begins to run on a TILA disclosure claim involving open-end credit, there is a distinction between cases where (as alleged by Follman) no disclosure was given and cases where (as the plaintiff in *Goldman* alleged) false, misleading or inaccurate disclosures were given.  *Id*. at 20.  The court ultimately held that "when, as here, there has been an incomplete, inaccurate or misleading disclosure, the limitations period should not be measured from the date the disclosure was required by law to be made, but instead by the date on which a finance charge was first imposed."  The court noted, "[u]ntil a finance charge is levied the debtor has no cause for complaint since there has been no action inconsistent with the inaccurate disclosure."  *Id*. at 21.

[8]     Closed-end credit involves a single loan of a fixed amount.  The borrower does not have the option to make repeated, additional charges; the full loan amount and the borrower's periodic payment obligations are established at the time the loan is made.  Unlike an open-end credit account, a closed-end loan terminates automatically upon the repayment of the loan (the principal plus any accrued interest).  *See* 12 C.F.R. § 226.2(a)(10).

damages claim on the day the loan papers were signed."); *Steib v. St. James Bank & Trust Co.*, 642 F. Supp. 910, 913 (E.D. La. 1986) ("[i]n a closed-end credit transaction such as the one involved in the present dispute, the date of the signing of the promissory note has been held to begin the running of the one-year period.").

Here, application of the statute of limitations is straightforward.  It is undisputed that Follman received the Credit Card Agreement with TILA account-opening disclosures on two occasions -- first on March 1, 2009 when she applied for her Victoria's Secret Credit Card, and the second time when she received the Credit Card in the mail on or before April 6, 2009 (when she had her Credit Card in hand and activated it over the telephone).  Follman alleges that the Bank's disclosures violated TILA because, on their face, they omitted a statement that an increase in the annual percentage rate would increase a cardholder's minimum monthly payment. Thus, the TILA violation alleged by Follman "occurred" when she received the Victoria's Secret Credit Card Agreement, and it was plain on the face of that Agreement.  Follman did not file her Complaint in this action until April 28, 2010, more than one year after she received the disclosures.  Therefore, her TILA claim is time-barred and should be dismissed as a matter of law.

### 2.    The Running of the Statute of Limitations Was Not Tolled Until Follman Made a Purchase with Her Credit Card

Follman argues in her pre-motion conference letter that TILA's one-year statute of limitations did not begin to run until she made her first (and only) purchase on April 28, 2009 -- which, conveniently, is exactly one year before she filed her Complaint in this action on April 28, 2010.  According to Follman, TILA protections cannot apply -- and the consumer does not have standing to sue the creditor for omitting an allegedly required provision in the account-opening disclosures -- until there has been an "extension of credit" by the creditor.  That

argument must be rejected in light of the U.S. Supreme Court's decision in *American Express Co. v. Koerner*, 452 U.S. 233, 241 (1981).

Section 1637(a) of TILA states that the initial disclosures must be provided "[b]efore opening any account … to the person to whom credit is to be extended." There is no formal definition in TILA of the term "extension of credit." However, in *Koerner*, the Supreme Court, drawing upon TILA's definition of the term "credit," held that there is an extension of credit when a credit card issuer opens a credit card account for the consumer, even if the credit card is not actually used until later (or, indeed, is never used):

> TILA's definition of "credit" is contained in … 15 U.S.C. § 1602(e) [15 U.S.C. § 1602(f) (2011)]: "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur a debt and defer its payment." Thus, *a credit card company such as American Express extends credit to an individual or an organization when it opens or renews an account*, as well as when the cardholder actually uses the credit card to make purchases. When the account is opened or renewed, the creditor has granted a right to "incur debt and defer its payment"; when the card is used, the creditor has allowed the cardholder "to defer payment of debt."

452 U.S. at 241 (emphasis added).

The conclusion that use of the credit card is not necessary before a TILA non-disclosure claim will accrue is further supported by TILA's damages provision, 15 U.S.C. § 1640(a). That provision specifically predicates TILA liability arising out of a violation of 15 U.S.C. § 1637(c) or (d) on a cardholder's "use" of the credit card. However, none of those situations where liability hinges on "use" of the credit card has any application in this case, which alleges that the Bank violated § 1637(a) of TILA, not §§ 1637(c) or (d) of TILA. The statute clearly distinguishes between liability under § 1637(a) and (b), on the one hand, and liability under § 1637(c) and (d), on the other hand:

> In connection with the disclosures referred to in <u>subsections (a) and (b) of section 1637</u> of this title, a creditor shall have liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title, section 1637(a) of this title, or of paragraph (4), (5), (6), (7), (8), (9), or (10) of section 1637(b) of this title .... In connection with the disclosures referred to in <u>subsection (c) or (d) of section 1637</u> of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title <u>or who uses the credit or charge card</u>.

15 U.S.C. § 1640(a) (emphasis added). *See Muro v. Target Corp.*, 250 F.R.D. 350, 354 & n.3 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) ("§ 1640 places limits on who may bring a private action to enforce §§ 1637(a) and (c) ..... § 1637(c) claims cannot be maintained by persons who have not paid a fee or used the credit card in question.").

Congress clearly knew how to condition the accrual of a TILA cause of action on a consumer's "use" of the credit card. That Congress did *not* do so with respect to the § 1637(a) non-disclosure violation alleged by Follman confirms that her use of the Victoria's Secret Credit Card was *not* a pre-condition for filing suit against the Bank. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("it is generally presumed that Congress acts intentionally and purposely" in using particular statutory language); *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("[t]he canon of *expressio unius est exclusio alterius* means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned").[9]

---

[9] Similarly, when Congress wrote TILA's statute of limitations provision, 15 U.S.C. § 1640(e), it provided that "in the case of a violation involving a private education loan [an action must be brought within] ...1 year from the date on which the first regular payment of principal is due under the loan." Accordingly, Congress knew how to identify when it wanted the statute of limitations to begin running. For a violation of Section 1637(a), Congress did not require use of the card for the running of the statute of limitations.

Here, Follman is "the person to whom credit is to be extended" by the Bank.  15

U.S.C. § 1637(a).  The Bank "extended" credit to Follman when it opened her Victoria's Secret

Credit Card Account, not just when she made her first and only purchase using the Card.

*Koerner*, 452 U.S. at 241.  There is no requirement under TILA that a consumer "use" the credit

card before a claim will accrue based upon the alleged failure to disclose a required term prior to

the opening of the account.  Moreover, Follman's Credit Card Agreement provided that she

would be legally bound by its terms by virtue of her application for credit, not just by using the

Credit Card:

> 2.  YOUR PROMISE TO US.
>
> A.  You agree to the terms of this Agreement.  You promise to do
> everything this Agreement requires of you.  You will be legally
> bound by this Agreement if you sign an application to obtain credit
> from us, *or* if you sign a charge slip ….

Agreement, Ex. 1 hereto, ¶ 2 (emphasis added).  Here, Follman not only applied for the Credit

Card, but she activated it over the telephone on April 6, 2009, three weeks before she used the

Card for the first time on April 28, 2009.  These activities were legally sufficient to give her

standing to sue for the alleged omission in the TILA account-opening disclosures that is the

subject of her Complaint.  *See Muro*, *supra*, 250 F.R.D. at 354-55 (credit card account is

"opened" when "the consumer has accepted a credit offer and becomes bound by its terms"; in

that case, the plaintiff lacked standing to sue the creditor under § 1637(a) of TILA because she

never activated her credit card).

In her pre-motion conference letter, Follman points to language in Regulation Z

requiring creditors to furnish account-opening disclosures "before the first transaction is made

under the plan."  She argues that a creditor can cure any defects in the disclosures up to the time

of the first transaction, so the right to sue the creditor for an alleged omission in the disclosures

does not accrue until the first transaction.  However, TILA's statute of limitations states that an action must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Here, the alleged violation occurred, if at all, when the account-opening disclosures were provided to Follman, because it is those disclosures that allegedly omitted a required term on their face.

There is nothing to indicate that the language of Regulation Z was intended to toll the running of the statute of limitations on a claim for non-disclosure from the time an account is opened to the time the card is used, and Follman's alleged cause of action has nothing to do with her "use" of the card in any event.  Moreover, Follman's argument that standing to sue does not exist during the time that the creditor can cure the alleged TILA violation (which Follman argues is any time before the first use of the credit card) ignores the fact that  TILA has an *express* cure provision that is limited to 60 days after discovery of the error.  *See* 15 U.S.C. § 1640(b).

Finally, use of the credit card was not necessary for Follman to have standing to sue since TILA does not require a showing of actual damages (and Follman does not seek them).  Follman essentially claims that she suffered a loss of the statutory right to full disclosure, which courts have held sufficient to confer TILA standing.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 n.3 (9th Cir. 2010); *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000); *see also Talley v. Deutsche Bank Trust Co.*, No. 07-4984 (RBK), 2008 U.S. Dist. LEXIS 83148, at *4 (D.N.J. Oct. 15, 2008) ("TILA explicitly gives standing to a person to whom the duty of disclosure is owed").  Follman's alleged loss of the statutory right to full disclosure occurred, if at all, when she received the account-opening disclosures from the Bank.[10]

---

[10]     As discussed immediately above and at pages 9-10 *supra*, this is not the type of case in which the TILA plaintiff alleges that the account-opening disclosures were inaccurate and misleading, such that the alleged violation could not be discovered until the card was

(continued...)

Accordingly, Follman's claims are time-barred pursuant to 15 U.S.C. § 1640(e) and should be dismissed with prejudice.

**B.    The Bank's Account-Opening Disclosures Complied with TILA**

Even if Follman's lawsuit was timely filed, which it was not, her claim that the disclosures violated TILA fails as a matter of law. Plaintiff alleges that the Credit Card Agreement failed to disclose the effect that an increase in the Annual Percentage Rate would have on a customer's minimum monthly payment. (Compl., ¶¶ 29-33). However, the Bank's disclosures did state that "[a]n increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge." Paragraph 13.c of the Credit Card Agreement provides:

> The Daily Periodic Rate of FINANCE CHARGE applicable to your Account will be computed by adding 13.8% to the value of an "Index" and dividing by 365 (The corresponding ANNUAL PERCENTAGE RATE will be that index plus 13.8%). The Index in effect for Each Billing Period shall be the highest "Prime Rate" of interest as published in the "Money Rates" section of The Wall Street Journal for the calendar month preceding the month in which the Billing Period begins, rounded upward, if necessary, to the nearest .001% ("Index"). The corresponding ANNUAL PERCENTAGE RATE will not decrease below 22.8% nor increase above 24.99%. <u>An increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge.</u>

---

(...continued)

used and a finance charge imposed. The Bank is aware of *dicta* in *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101 (JFB) (WDW), 2008 U.S. Dist. LEXIS 5535 (E.D.N.Y. Jan. 25, 2008), to the effect that the TILA limitations period for open-end credit is calculated from the date the first finance charge is imposed. *Id.* at *18-19. However, *McAnaney* is a case in which the creditor did impose fees, which the plaintiff claimed had not been disclosed at the origination of the loan. *Id.* at 6-7. In contrast, no finance charges were imposed by the Bank in this case. Obviously, the "occurrence of the violation" which triggers the running of the one-year statute of limitations, 15 U.S.C. § 1640(e), means different things in different cases depending upon the facts involved and the violation alleged.

Agreement at ¶13.c (emphasis added). Follman asserts that instead of or in addition to the underlined language, the Bank was required to disclose any effect that an increase in the Annual Percentage Rate would have on a customer's minimum monthly payment. (Compl., ¶¶ 29-33).

Follman's contention is legally erroneous for the following reasons.

**1.      Relevant TILA Provisions**

TILA itself says nothing about making the disclosure that Follman claims should have been made.

Moreover, under Regulation Z, the Bank was merely required to disclose "to the extent applicable":

> The circumstances under which a finance charge will be imposed and an explanation of how it will be determined [including] … [a] disclosure of each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable, and the corresponding annual percentage rate.[12]

12 C.F.R. § 226.6(a)(2) (footnote in original).

Footnote 12 to 12 C.F.R. § 226.6(a)(2) provides that "[i]f a creditor is offering a variable rate plan, the creditor shall also disclose … the effect(s) of an increase."

Finally, the official staff commentary to Section 226.6(a)(2) provides that "examples" of the effects of a rate increase that "must be disclosed include: Any requirement for additional collateral if the annual percentage rate increases beyond a specified rate …. [and] [a]ny increase in the scheduled minimum periodic payment amount." 12 C.F.R. § 226 Supp. I Comment 6(a)(2)-8. It is this last "example" -- the effect of a rate increase (if "any") on the scheduled minimum periodic payment amount -- that Follman claims was omitted.

**2.      Relevant Provisions in the Credit Card Agreement**

Contrary to Follman's contention, the Bank's disclosures complied with TILA. There is no dispute that the Bank fully disclosed the effects that a rate increase would have on

the finance charge, namely that "[a]n increase … in the Annual Percentage Rate will result in a corresponding increase … in the amount of Finance Charge." *See* Agreement, Ex. 1 hereto, at ¶ 13.c. Under the terms of Follman's Credit Card Agreement, an increase in the interest rate would trigger an automatic increase in the finance charge because the finance charge is calculated by a formula that includes the interest rate. *See id.* ("The Daily Periodic Rate of FINANCE CHARGE applicable to your Account will be computed by adding 13.8% to the value of an "Index" and dividing by 365 (The corresponding ANNUAL PERCENTAGE RATE will be that index plus 13.8%) …. The corresponding ANNUAL PERCENTAGE RATE will not decrease below 22.8% nor increase above 24.99%.  An increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge.") (emphasis added).

A change in the interest rate, however, does *not* automatically trigger a change in the minimum periodic payment under the Victoria's Secret Credit Card Agreement.  Whether there is a change in the minimum monthly payment depends on what happens with respect to the charges and payments on the account and is *not* directly affected by a change in the interest rate. Under the Credit Card Agreement, the minimum payment is calculated based on a mathematical formula that includes the balance at the end of the cycle, and that formula does not change based on a change in the interest rate.  Paragraph 10 of the Credit Card Agreement states:

> 10.  PAYMENTS; MINIMUM PAYMENT.  You may pay all of your Account balance at any time without penalty.  You must pay us at least the Minimum Payment Due for each Billing Period by the Payment Due Date shown on your Statement.  If your New Balance is less than $10, the entire amount is due.  If your New Balance is $10 or more, the Minimum Payment Due consists of the greater of $10 or 5% of the New Balance, rounded down to the nearest $5 (minimum $10), plus any amount past due from prior months and any fees.

Put another way, the minimum monthly payment is dynamic. It varies from month to month, from cardholder to cardholder, depending upon the activity during the month and the past history of the account. Because this is open-end credit, with the amount of any payment and the time required to repay dependent on the customer's use of the account as well on the decisions that the customer makes as to how much to pay at any time, the *only* disclosure that will *always* be correct is the one that the Bank made regarding the effect of a rate increase on the finance charge. Thus, the Bank did disclose "the effects of an increase" "to the extent applicable" given the terms of the Victoria's Secret Credit Card Agreement. See 12 C.F.R. § 226.6(a)(2), n.12. The Bank was not required to disclose that the minimum monthly payment would increase if the rate increased because the amount of the minimum monthly payment can change, *independent of any change in the rate*, depending upon a variety of unrelated factors such as the way the customer uses the account as well as the decisions the customer makes as to how much to pay at any one time.

### 3. Relevant TILA Policies

Thus, in this case, bearing in mind that TILA was enacted to promote "the informed use of consumer credit by providing for disclosures about its terms and cost," 15 U.S.C. § 1601(a), the Bank was not required to disclose the effects of a rate increase on the minimum payment amount because under the Credit Card Agreement the minimum payment is *not* tied directly to a rate change. Any disclosure concerning the effect of a rate increase on the minimum monthly payment would be totally hypothetical and speculative and would do nothing to foster the consumer's "informed use" of credit.[11] *See, e.g.*, *Watts v. Key Dodge Sales*, 707

---

[11]     Indeed, to make a disclosure concerning the effect of a rate change on the minimum monthly payment, the creditor would have to assume that the account was closed (*i.e.*, that no further charges would be made) when the rate changed, and then compare the

(continued...)

F.2d 847, 852 (5th Cir. 1983) ("TILA and Regulation Z do not require that a disclosure statement provide for every improbable eventuality").  Perhaps such a disclosure would be meaningful in the context of another issuer's credit card agreement, but it is not here.  Put simply, such a disclosure is not "applicable" here.  *See* 12 C.F.R. § 226.6(a) (disclosures required only "to the extent applicable").  *See also Muro*, *supra*, 250 F.R.D. at 355 ("The court's duty, however, is not to give broad construction [to TILA] mindlessly, but rather to apply constructions that further the goal of the statute, which is to promote 'the informed use of credit' by ensuring that consumers are aware of the costs of credit and able to meaningfully compare different credit offers.  *See* 15 U.S.C. § 1601(a).  So long as a consumer is given proper disclosures before binding herself, this statutory purpose is amply achieved.").

It is important to remember that Regulation Z requires disclosures only "to the extent applicable," 12 C.F.R. § 226.6(a)(2), and that the disclosure in question -- the effect of a rate increase on the scheduled minimum periodic payment amount -- is characterized by the Board itself as an "example" of an effect that is subject to disclosure.  12 C.F.R. § 226 Supp. I Comment 6(a)(2)-8.  Thus, under the Board's own rules of construction, the disclosure in question was merely intended to be "illustrative":

> 4.  Rules of construction.  (a)  Lists that appear in the commentary may be exhaustive or illustrative; the appropriate construction should be clear from the context.  In most cases, *illustrative* lists are introduced by phrases such as "including, but not limited to," "among other things," "*for example*," or "such as."

---

(...continued)

amount and number of payments needed to repay the then-outstanding balance at the higher rate to the amount and number of payments needed to repay the then-outstanding balance at the rate that would have been in effect before the change.  This would be a fruitless exercise because it is based on the erroneous assumption that a credit card account is stagnant, not dynamic, and would not impart any meaningful information to the consumer.

12 C.F.R. § 226 Supp. I, Introduction, ¶ 4(a) (emphasis added) [12 C.F.R. § 226 Supp. I, Introduction, ¶ 3(a) (2011)].

Notably, and in the same vein, even the pro-consumer National Consumer Law Center ("NCLC")[12] recognizes that the obligation to disclose the effect of a rate increase on the minimum monthly payment amount depends upon the facts involved and is not mandatory in all cases. Describing the official staff commentary to Section 226.6(a)(2)-8, the NCLC's *Truth in Lending* treatise states:

> Finally, creditors must also disclose the effects of an increase in rate. *This might include a corresponding increase in the minimum monthly payment*, or the fact that at a certain level, the creditor will call for more collateral.

NCLC, *Truth in Lending*, § 5.5.510.2, p. 316 (6th ed. 2007) (emphasis added). The NCLC's use of the word "might" is fitting given the Board's description of this type of disclosure as merely "illustrative." The disclosure that the Bank did make was the correct disclosure under the circumstances and was fully compliant with TILA.

An example helps further illustrate the correctness of Bank's position on this issue. If the Bank's Credit Card Agreement tied the minimum monthly payment directly to a rate change, a disclosure under the official staff commentary to Footnote 12 of Regulation Z would arguably be required since an increase in the rate would effect an "increase in the scheduled minimum periodic payment amount." Thus, hypothetically, if the Credit Card Agreement provided that the minimum periodic payment was initially $10 or 5% of the new balance, whichever is larger, but if the rate ever increased above 18%, the payment would

---

[12]    The NCLC describes itself as "the nation's consumer law expert, helping consumers, their advocates, and public policy makers use powerful and complex consumer laws ...." *See* http://shop.consumerlaw.org/about-us.aspx.

increase to $25 or 10% of the new balance, that "effect of a rate increase" would arguably require disclosure under TILA.  That is *not* the case here, where there is no quantifiable link between a rate change and the minimum monthly payment.

**C.      In Any Event Follman is Not Entitled to Statutory Damages**

Under the statutory damages provision, Section 1640(a)(2), not all types of disclosure violations give rise to statutory damages.  15 U.S.C. § 1640(a)(2); *Schuster v. Citibank (S.D.), N.A.*, No. 00-cv-5940, 2002 U.S. Dist. LEXIS 22558, at *10 (S.D.N.Y. Nov. 21, 2002) ("TILA does … limit recovery of statutory damages to certain types of disclosure violations").  Indeed, Congress amended the statutory damages provision in 1980 to limit "a creditor's civil liability for statutory penalties to only those disclosures which are of central importance in understanding a credit transaction's cost or terms."  S. Rep. No. 96-73, at 17, reprinted in 1980 U.S.C.C.A.N. at 294.  The rationale behind the change was to "eliminate litigation which is based on violations of purely technical nature."  *Id.*; *Brown v. Payday Check Advance*, 202 F.3d 987, 991 (7th Cir. 2000) (Section 1640(a) was revised "in 1980 to curtail damages awards for picky and inconsequential formal errors").

Even if the Bank was required to include in its disclosures a statement concerning the effect of a rate increase on the scheduled minimum periodic payment amount, that is not the type of claim for which statutory damages are available.  TILA's statutory damages provision limits the recovery of statutory damages to "only" the following specified provisions:

> In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have liability determined under paragraph (2) [for statutory damages] only for failing to comply with the requirements of section 1635 of this title, section 1637(a) of this title, or of paragraphs (4), (5), (6), (7), (8), (9), or (10) of section 1637(b) of this title ….

15 U.S.C. § 1640(a) (emphasis added).

22

The non-disclosure that is the subject of Follman's complaint does not fall into any of the specifically enumerated categories of violations for which statutory damages are available. Rather, Follman asserts that the Bank failed to include a disclosure required not by TILA, but by the official staff commentary regarding Footnote 12 to Section 226.6(a)(2) of Regulation Z. The plain language of Section 1640(a) does not provide for statutory damages for violations of Regulation Z or the official staff commentary. *See e.g., Turk v. Chase Manhattan Bank, USA, N.A.*, No. 10-cv-1573, 2001 U.S. Dist. LEXIS 8862, at *6-9 (S.D.N.Y. June 11, 2001) (statutory damages unavailable for violations not specifically provided for in Section 1640(a)). The staff commentary to Footnote 12 to Regulation Z cannot be the basis for a claim of statutory damages.

In *Schuster v. Citibank (S.D.), N.A.*, the court held that a violation of Footnote 15 to Regulation Z constituted a violation of TILA section 1637(b)(5) and thus statutory damages were available. *See Schuster*, 2002 U.S. Dist. LEXIS 22558, at *10-11 [12 C.F.R. § 226.7(b)(4)(i) (2011)]. The court found that Section 1637(b)(5) and Footnote 15 of Regulation Z, which implemented Section 1637(b)(5), both dealt with the "disclosure of periodic rates in the periodic statements in almost identical language." *Id.* at *10. Thus, the court held, by violating Footnote 15, the creditor also violated Section 1637(b)(5) and statutory damages were available. *Id.* at *10-11. Even assuming that *Schuster* was correctly decided, the circumstances of this case are different. Here, Footnote 12 of Regulation Z relating to disclosures of the effect of a rate increase on minimum monthly payments is *not* a requirement that is "almost identical" to the language in the statute itself. Footnote 12 requires substantial additional disclosures that have no statutory counterpart. Thus, *Schuster* is distinguishable.

## VII.   CONCLUSION

For all of the foregoing reasons, defendant World Financial Network National

Bank respectfully requests that the Court grant its Motion for Summary Judgment and dismiss

Follman's Complaint with prejudice.

Dated: May 16, 2011          Respectfully submitted,
      New York, New York

LEADER & BERKON LLP

By:

JAMES K. LEADER (JL-9417)
MICHAEL J. TIFFANY (MT-9367)
630 Third Avenue
New York, NY 10017
Telephone: (212) 486-2400
Fax: (212) 486-3099
Email: mtiffany@leaderberkon.com

&

BALLARD SPAHR LLP

ALAN S. KAPLINSKY*
MARK J. LEVIN*
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8235
Fax: (215) 864-9755
Email: levinm@ballardspahr.com
*admitted *pro hac vice*

*Attorneys for Defendant*
*World Financial Network National Bank*